# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | | |
|---|---|---|
| MICOI MONTGOMERY | * | CIVIL ACTION NO. 12-2931 |
| VERSUS | * | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Micoi Montgomery, born July 20, 1979, filed applications for a period of disability, disability insurance benefits and supplemental security income on March 11, 2010, alleging disability as of July 30, 2009, due to a back problem, hypertension, anemia, and arthritis.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards.  *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from American Legion Hospital dated July 16, 2008 to January 27, 2010**.  On January 22, 2010, claimant complained of low back pain for two months.  (Tr. 219).  She had a history of high blood pressure.

On examination, claimant's blood pressure was 130/96.  Examination of the lower back and extremities demonstrated right-sided sacroiliac joint pain and gluteal bursitis.  An MRI showed some facet joint arthropathy at L2-3, L3-4 and L4-5.

Dr. Michael Arshavir's impression was severe sacroiliac joint pain and gluteal bursitis, most likely reactive.  Additionally, her MRI was suggestive of early facet joint arthropathy.  He administered injections.  (Tr. 217).

**(2) Records from UMC – University Medical Center dated October 20, 2010 to November 9, 2010**.  On October 20, 2010, claimant complained of lumbar back pain for more than a year worsened by walking and standing.  (Tr. 183-84).  Her hypertension was controlled on medications.  (Tr. 185).  She was obese at 66 inches tall and 252 pounds.  (Tr. 183).

A lumbar MRI dated November 9, 2010, showed mild scoliosis without acute abnormality.  (Tr. 182).

**(3) Records from SWLA Center for Health Service dated February 18, 2010 to March 4, 2010**.  On February 18, 2010, claimant complained of severe lower back pain radiating to both legs, and constant headaches relieved by over-the-counter pain medications.  (Tr. 223).  She was 5 feet 4 inches tall, and weighed 245 pounds.  Her blood pressure was 140/90.

The assessment was hypertension, chronic low back pain, intermittent headaches, and obesity with improper diet.  She was prescribed Naprelan and Flexeril.

At a follow-up appointment on March 4, 2010, claimant reported that the medications had given her good relief of low back pain.  (Tr. 221).  The assessment was chronic low back pain and hypertension, well-controlled.  She was referred for physical therapy.

**(4) Records from Dr. Satinder Saini dated August 12, 2008 to May 26, 2010**.  On September 16, 2009, claimant complained of back pain.  (Tr. 240).  An MRI dated September 21, 2009, showed fluid in the facet joints at L2-3, L3-4 and L4-5 suggesting early facet joint arthropathy.  (Tr. 251).

**(5) Disability Determination Explanation dated April 29, 2010**. Dr. Charles Lee determined that claimant had the physical residual functional capacity ("RFC") to perform light work. (Tr. 56).

**(6) Records from Acadia Family Clinic dated February 23, 2007 to October 5, 2010**. On February 13, 2007, claimant complained of right shoulder pain. (Tr. 274). Cervical spine views dated February 22, 2007, were negative. (Tr. 287). The assessment was cervical strain and muscle spasms. (Tr. 275).

On March 14, 2010, claimant complained of tripping on a coffee table, causing an injury to her right ankle. (Tr. 289). X-rays of the right tibia/fibula were negative. (Tr. 250). The impression was a right ankle sprain and contusion. (Tr. 290).

On September 21, 2010, claimant complained of lower back pain. (Tr. 266). The assessment was lumbar pain and muscle spasms. (Tr. 267). She was prescribed Naproxen and Flexeril.

At a followup visit on October 5, 2010, claimant diagnoses were lumbar pain and radiculopathy. (Tr. 263).

**(7) Claimant's Administrative Hearing Testimony**. At the hearing on January 7, 2011, claimant was 31 years old. (Tr. 25). She testified that she was 5

4

feet six inches tall, and weighed 240 pounds.  She reported that she had gained at least 15 pounds in the past year.  (Tr. 26).

Claimant testified that she had completed the 11th grade.  She had vocational training as a certified nursing assistant.  She had a driver's license, but stopped driving a year and a half prior because of pain.  (Tr. 27).

Regarding work, claimant testified that she had worked as a CNA at a nursing home for 10 years.  She stated that she had stopped working on July 30, 2009, because of back pain.  (Tr. 27-28).

As to complaints, claimant reported back pain, depression, tingling in her legs causing, right ankle problems, trouble sleeping, and high blood pressure.  (Tr. 28, 31).  Her medications included Tramadol, Naproxen, and hydrochlorothiazide. (Tr. 32).  She complained that her medication made her drowsy and did not stop the pain.  (Tr. 28).

Regarding activities, claimant testified that she was limited as to housework.  (Tr. 29).  She stated that she shopped, but her children helped her. (Tr. 29-30).  She said that she attended church a lot.  (Tr. 30).

Claimant reported that she tried housekeeping, but had to take breaks.  She also watched television, read, and listened to music.  (Tr. 31).  She stated that she could not stay focused.

As to restrictions, claimant testified that she could not lift five pounds of sugar.  (Tr. 30).  She stated that she could not walk far before having to sit down because of severe pain.  (Tr. 32).  She said that she could bend, kneel, stoop, and pick up small objects.  (Tr. 33).  She complain ed that cold weather made her pain worse.

**(8) Administrative Hearing Testimony of Harris Rowzie, Vocational Expert ("VE")**.  Mr. Rowzie described claimant's past work as a CNA as medium with a Specific Vocational Preparation of 4.  (Tr. 37).  The ALJ posed a hypothetical in which he asked the VE to assume a claimant age 31 with an 11th-grade education and past relevant work as a CNA who had the limitations to which claimant had testified.  In response, Mr. Rowzie testified that such claimant could not return to work as a CNA because of her complaints of back pain.

The ALJ posed a second hypothetical in which he asked the VE to assume a claimant with the same background who had some problems in her lumbar spine at multiple levels and was limited to sedentary work with lifting no more than 10 pounds occasionally, walking or standing no more than two hours daily and sitting six hours out of eight; was allowed to briefly change positions for comfort; could do no climbing, balancing, or working on uneven surfaces due to back pain, and needed to be in a climate-controlled environment because of high blood pressure.

(Tr. 38).  In response, Mr. Rowzie testified that such claimant could work as a sedentary dresser, of which there were 139,000 jobs nationally and 2,000 statewide; sedentary assembler, of which there were 289,000 jobs nationally and 6,200 statewide, and sedentary telephone quotation clerk, of which there were 1,100,000 jobs nationally and 16,600 statewide.  (Tr. 38-39).

When the ALJ changed the hypothetical to add the limitations of problems with pain and a need to take unscheduled breaks, the VE testified that claimant would be unemployable at that point.  (Tr. 39).  In response to another question from claimant's counsel, Mr. Rowzie confirmed that a person would have to be able to sustain work eight hours a day, five days a week, to perform the identified jobs.

**(9) The ALJ's findings are entitled to deference**.  Claimant argues that the ALJ's conclusions that: (1) she could perform sedentary work in a controlled environment, allowing the option to briefly change positions as needed and requiring no climbing, balancing, or walking on uneven surfaces, and (2) had the residual functional capacity for the full range of sedentary work, were "inherently conclusory" and, therefore, erroneous.  [rec. doc. 8, p. 2].

7

In her Findings of Fact and Conclusions of Law No. 5, the ALJ stated that:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work in a climate controlled environment, which allows the option to briefly change positions as needed for comfort, and requires no climbing, balancing, or walking on uneven surfaces.

(Tr. 15).

In conclusion, the ALJ stated that "[b]ased on a residual functional capacity for the *full* range of sedentary work, considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 201.25." (emphasis added). (Tr. 18).

Viewing the entire decision, it appears that the ALJ's intention was to find that claimant had the RFC to perform a *limited* range of sedentary work. In fact, the ALJ gave Dr. Lee's assessment that claimant could perform light work "little weight," because evidence at the hearing indicated that claimant was more limited than determined by him. (Tr. 16).

Procedural perfection in administrative proceedings is not required. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). The courts will not vacate a judgment unless the substantial rights of a party have been affected. *Id.* (*citing Carter v. Massey-Ferguson, Inc.*, 716 F.2d 344, 349 (5th Cir.1983); Fed.R.Civ.P. 61).

8

Here, the ALJ made an express finding that the claimant had the residual functional capacity to perform sedentary work in a climate-controlled environment, which allowed the option to briefly change positions as needed for comfort, and required no climbing, balancing, or walking on uneven surfaces.  (Tr. 15).  The ALJ then cited the jobs identified by the vocational expert, which were based on a hypothetical limiting claimant to sedentary work with limitations to lifting no more than 10 pounds occasionally, walking or standing no more than two hours a day, and sitting six hours out of eight; allowing brief changes of positions for comfort; no climbing, balancing, or working on uneven surfaces, and the need to be in a climate-controlled environment.  (Tr. 18, 38)  Based on the ALJ's reasoning, it is apparent that she intended to find that claimant was had the RFC to perform a limited, not full, range of sedentary work.

The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time.  *Mays*, 837 F.2d at 1364 (*citing Gulf States Utilities Co. v. Ecodyne Corp*., 635 F.2d 517, 520 (5th Cir.1981)).  In this case, remanding this case for a purely procedural error would produce the same result while wasting time and resources.  *Id*.  Thus, this argument lacks merit.

Next, claimant asserts that the ALJ erred in assessing her credibility.  [rec. doc. 8, p. 3].  Specifically, she objects to the ALJ's conclusion that:

9

> In sum, the claimant does not bolster her credibility.  She reported
> that she tripped and fell due to numbness of the legs, however,
> records indicate that she tripped and fell over a coffee table (Exhibit
> 7F/31).

(Tr. 16).

Claimant asserts that she tripped due to numbness of the legs.  However, the

record referenced by the ALJ indicates only that claimant "Tripped on Coffee

table."  (Tr. 289).  There is no indication in this report that claimant tripped due to

leg numbness.  The ALJ's finding as to credibility is entitled to great deference.

*Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Next, claimant argues that the ALJ disregarded her complaints of pain

because she tried to work.  In the decision, the ALJ stated as follows:

> The claimant's ability to work despite her complaints of pain is an
> indication that her impairments are not so severe as to be disabling.

(Tr. 17).

Claimant asserts that her complaints of pain were supported by Dr.

Michael's report indicating that she had "severe sacroiliac joint pain" and an MRI

"suggestive of early facet joint arthropathy."  (Tr. 219).

To prove disability resulting from pain, an individual must establish a

medically determinable impairment that is capable of producing pain.  *Ripley v.*

10

*Chater*, 67 F.3d 552, 556 (5th Cir. 1995).  Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity.  *Id*.  Disabling pain must be constant, unremitting, wholly unresponsive to therapeutic treatment, and corroborated in part by objective medical testimony.  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

Here, the medical records do not support an objective condition corroborating claimant's complaints of severe pain.  The MRI referenced by Dr. Michael showed *some* facet joint arthropathy at L2-3, L3-4 and L4-5, which he indicated was in the early stages.  (emphasis added).  (Tr. 219).  A subsequent MRI showed only *mild* scoliosis without acute abnormality.  (emphasis added).  (Tr. 182).

Although a claimant's assertion of pain or other symptoms must be considered by the ALJ, the Fifth Circuit requires that a claimant produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged.  *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).  The mere existence of pain does not automatically create grounds for disability, and

subjective evidence of pain will not take precedence over conflicting medical evidence. *Id*.

In this case, the objective evidence does not support a finding of disabling pain. Accordingly, this argument lacks merit.

Next, claimant argues that the vocational expert's testimony establishes that the sedentary work base had been significantly eroded given her limitations.

Social Security Ruling 96-9p provides, in pertinent part, as follows:

> When there is a reduction in an individual's exertional or nonexertional capacity so that he or she is unable to perform substantially all of the occupations administratively noticed in Table No. 1, the individual will be unable to perform the full range of sedentary work: the occupational base will be 'eroded' by the additional limitations or restrictions."
>
> ***
>
> [S]ince each occupation administratively noticed by Table No. 1 represents numerous jobs, the ability to do even a *limited* range of sedentary work does not in itself establish disability in all individuals, although a finding of "disabled" usually applies when the full range of sedentary work is significantly eroded.

Although SSR 96-9p provides that a finding of disabled *usually* applies when the full range of sedentary work is significantly eroded, that does not end the inquiry. The regulation goes on to state that:

> However, *the mere inability to perform substantially all sedentary unskilled occupations does not equate with a finding of disability*. There may be a number of occupations from the approximately 200 occupations administratively noticed, and jobs that exist in significant numbers, that an individual may still be able to perform even with a sedentary occupational base that has been eroded.

(emphasis added).

Claimant argues that the VE testified that claimant would be unemployable if she had problems with pain requiring her to take any unscheduled breaks or was unable to sustain work eight hours a day for five days a week.  However, the ALJ did not accept the assumptions posed in these hypotheticals.  It is well established that the ALJ is not bound by VE testimony which is based on evidentiary assumptions ultimately rejected by the ALJ.  *See Owens v. Heckler,* 770 F.2d 1276, 1282 (5th Cir.1985).

 Here, the ALJ rejected claimant's testimony based on the evidence of record.  As the ALJ's hypotheticals to the vocational expert reasonably incorporated all disabilities of the claimant recognized by the ALJ, and the claimant or her representative had the opportunity to correct deficiencies in the ALJ's question, the ALJ's findings are entitled to deference.  *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001).

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D**

**1415 (5TH CIR. 1996).**


Signed March 11, 2014 at Lafayette, Louisiana.


*C. Michael Hill*
—————————————————
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE


Copy sent:  RFD
On:  3/12/2014
By:  MBD